UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

EXTENET SYSTEMS, INC.,

                         Plaintiff,

-against-

VILLAGE OF MUNSEY PARK,

                         Defendant.

-------------------------------------------------------------------------x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)**

DOCKET NO. 2:18-cv-3587

       Plaintiff ExteNet Systems, Inc. ("Plaintiff" or "ExteNet"), by its attorneys Cuddy & Feder LLP, as and for its Complaint against Defendant Village of Munsey Park ("Village" or "Defendant"), respectfully alleges as follows:

**The Parties**

       1.    Plaintiff is a corporation organized under the laws of the State of Delaware, with a principal address at 3030 Warrenville Road, Lisle, Illinois 60532. Plaintiff constructs and deploys facilities for the provision of telecommunications services and/or personal wireless services to the public, as those terms are used and defined in §§ 253 and 332 of The Telecommunications Act of 1996 ("TCA").

       2.    Defendant is a municipal corporation of the State of New York, located at Munsey Park Village Hall, 1777 Northern Blvd., Manhasset, New York 11030.

**Jurisdiction And Venue**

       3.    This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. §§ 253 and 332(c)(7)(B), because Plaintiff has been adversely affected and aggrieved by Defendants' actions in violation of those provisions, and 28 USC § 1331 because this is a civil

action that presents federal questions arising under the TCA.

4. This Court has personal jurisdiction over Defendant, who resides in this District, and venue is proper in this Court because this is the District where Defendant resides.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims stated herein arose in the judicial district for the United States District Court, Eastern District of New York, and Defendant resides in this District.

**Facts Common To All Counts**

6. This action arises from the Village's improper refusal to grant Plaintiff access to the Village's public rights of way to replace an existing utility pole and locate telecommunications equipment thereon ("Equipment").

7. ExteNet provides "telecommunications service" as defined by 47 U.S.C. § 153(53).

8. The Equipment is a Personal Wireless Service Facility as defined in § 332(c)(7).

9. Plaintiff, through its wholly owned subsidiary, Extenet Systems (New York), Inc., holds a Certificate of Public Convenience and Necessity ("CPCN") to operate in New York State as a facilities-based provider and reseller of telephone service.

10. Plaintiff's CPCN authorizes it to provide telecommunications services and deploy telecommunications facilities in public rights of way throughout the State of New York.

11. Plaintiff has proposed installation of the Equipment on a replacement utility pole in the Village which existing pole is owned by PSE&G Long Island ("PSE&G") and which PSE&G has authorized.

12. The Equipment will transmit personal wireless services to the public

pursuant to Plaintiff's customer agreement(s) in accordance with New York State Public Service Commission approved tariffs.

13. 47 U.S.C. § 332(c)(7)(ii) limits the land use authority of municipalities and requires them to "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed."

14. In 2009, the Federal Communications Commission ("FCC") issued a Declaratory Ruling clarifying "reasonable period of time" to mean 90 days for siting applications requesting collocation of equipment on existing facilities ("Shot Clock Order").

15. Plaintiff filed a request with the Village to access the public right of way along with a zoning application for a conditional use permit on January 18, 2018, with a February 22, 2018 re-submission date ("Application") (**Exhibit 1**).

16. The Application was for a permit to replace PSE&G's existing utility pole with a slightly taller utility pole required to support the Equipment.

17. Under the Shot Clock Order, the Village's deadline to review and act on Plaintiff's Application was May 23, 2018.

18. May 23, 2018 passed without any action by Defendant on Plaintiff's Application, which action was required by law.

19. Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), the Village's failure to act claim is subject to a thirty (30) day limitations period for filing in a court of competent jurisdiction and courts are required to "hear and decide" such claims on an "expedited basis." *Id*.

20. Plaintiff has brought this action within thirty (30) days of Defendant's failure to act, and is entitled to expedited relief which may include permanent injunctive relief in the form of an order that the Village grant Plaintiff's access and issue any required permits for the

Equipment placed on the replacement utility pole in the public right of way.

21. The Village's laws and failure to act thwarts federal policy and laws by unreasonably discriminating against ExteNet as compared to other utility providers in the public rights of way, and by effectively prohibiting ExteNet from providing its telecommunications services, in violation of federal law.

22. The Village's failure to act violates §§ 253(a) and 332(c)(7) of the TCA.

23. The Village's refusal to grant ExteNet access to the public right of way also violates New York state law, including N.Y. TRANSP. CORP. LAW § 27 and is in derogation of Plaintiff's rights under its CPCN.

24. Plaintiff respectfully requests: (1) a declaration that the Village's failure to act on Plaintiff's Application within the mandated 90 days violates §§ 253 and 332 of the TCA by barring Plaintiff's access to public rights of way within the Village for the purpose of providing telecommunications services; and (2) permanent injunctive relief granting Plaintiff's Application.

25. Plaintiff is also entitled to the granting of its Application because New York State Transportation Corporations Law § 27 and Plaintiff's CPCN provide Plaintiff with the right to use public rights of way for infrastructure deployment, upon consent and reasonable terms and conditions for access, which the Village has denied.

26. Plaintiff is entitled to injunctive relief requiring the Village to immediately issue all required and necessary permits to install, deploy and operate the proposed Equipment.

27. Plaintiff respectfully asks this Court to prioritize the timely disposition of this case to mandate the approval of the Application, in accordance with 47 U.S.C. § 332(c)(7)(B)(v), directing that "the court shall hear and decide" such claims "on an expedited basis."

**Important Federal Interests Hampered by Defendant's Failure to Act**

28. Congress has declared a public need for wireless communication services, as set forth in the TCA and FCC rules, regulations and orders promulgated thereunder.

29. Congress intended the TCA to "provide for a pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans." H.R. Rep. No. 104-458, at 206 (1996) (Conf. Rep.); *see also* 1996 U.S. Code Cong. and Adm. News, p. 10.

30. While the TCA preserves state and local authority over the placement, construction or modification of wireless facilities, it also expressly *preempts* any state or local action *or inaction* that effectively prohibits the provision of wireless services.

31. Specifically, § 253 of the TCA prohibits municipalities from erecting barriers that prohibit or have the effect of prohibiting the ability of any entity to provide telecommunications services. Section 253 applies to a municipality's *failure to act*, which unreasonably delays deployment of a provider's facilities and provision of telecommunications services. *See* 47 U.S.C. § 253(a).

32. Further, § 253(c) limits local authorities' power to "manage" use of public rights of way by requiring that any actions be made on a competitively neutral and non-discriminatory basis, such as through the imposition of time, place and manner restrictions.

33. In furtherance of national policy to expedite wireless deployment, in its 2009 "Shot Clock Order," the FCC defined specific "reasonable" timeframes within which state and local governments *must act* on wireless siting applications.

34. The FCC recognized: "personal wireless service providers have often faced lengthy and unreasonable delays in the consideration of their facility siting applications, and that

the persistence of such delays is impeding the deployment of advanced and emergency services." *Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*, Declaratory Ruling, 24 FCC Rcd. 13994 ¶ 32 (Nov. 18, 2009) (Shot Clock Order "promotes the deployment of broadband and other wireless services by reducing delays in the construction and improvement of wireless networks") ("Shot Clock Order").

35. The Shot Clock Order states that a "reasonable period of time" under Section 332(c)(7) of the TCA is presumptively "***90 days*** to process personal wireless service facility siting applications requesting collocations," after which time "a ***'failure to act' has occurred and personal wireless service providers may seek redress in a court of competent jurisdiction* . . . ."** (emphases added).

36. Pursuant to federal mandates, telecommunications facilities are part of the nation's important infrastructure and further a national policy to extend wireless services to all areas of America and to provide broadband services, which by virtue of emerging technology and increasing demand includes the facilities at issue here as evidenced in numerous laws adopted by the Congress, FCC regulations and federal court decisions.

37. As a holder of a CPCN, ExteNet has independent rights under New York State Law, including New York State Transportation Corporations Law § 27, to deploy its infrastructure in rights of way on reasonable terms and conditions for such access.

### Plaintiff's Application and Defendant's Violation of the Shot Clock Order

38. On January 16, 2018, Plaintiff submitted its Application for a Conditional Use Permit.

6

39. On January 24, 2018, Defendant requested additional information from Plaintiff, including: (1) Preliminary Construction schedule and completion date; (2) Preliminary Traffic Control Plan; (3) Financial Statements; (4) Applicant's technical qualifications; (5) Proof that Plaintiff had obtained all other governmental approvals and permits. Defendant also asked Plaintiff to submit 9 sets of proposed plans for review by the Board of Trustees, Village Counsel and the Village's Building Inspector.

40. On February 22, 2018, Plaintiff delivered *all* of the further requested documentation and information to Defendant. (Exhibit 1).

41. On March 13, 2018, and again on April 3, 2018, Plaintiff asked Defendant about the status of its Application, but Defendant failed to respond.

42. On April 19, 2018, and again on May 11, 2018, Plaintiff was told by Defendant that its Application was with the Village Attorney.

43. Defendant was mandated by law to rule on Plaintiff's Application by May 23, 2018, but failed to make any determination, in violation of the 47 U.S.C. § 332(c)(7) and the Shot Clock Order.

## COUNT I
**(Violations of 47 U.S.C. § 332(c)(7)(B)(i)(II) and (v))**

44. Plaintiff repeats and realleges all prior allegations as if set forth herein.

45. Section 332(c)(7)(B)(i)(II) of the TCA, as amended by Section 704, provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

46. The Village's failure to meet the applicable timeframe presumptively constitutes a failure to act under Section 332(c)(7)(B)(v), enabling Plaintiff as applicant to pursue

7

judicial relief.

47. In violation of Section 332(c)(7)(B)(i)(II), the Village's inaction effectively prohibits ExteNet from providing wireless services.

48. ExteNet is entitled to an order and judgment granting its Application and mandating that the Village issue all necessary permits and authorizations for ExteNet to immediately begin the necessary work to deploy its infrastructure in the rights of way, which permanent injunctive relief serves the TCA's goals.

49. Permanent injunctive relief is particularly appropriate in this case, which involves the installment of one replacement utility pole and addition of wireless transmission Equipment in the public right of way.

## COUNT II
**(Violation of 47 U.S.C. § 253)**

50. Plaintiff repeats and realleges all prior allegations as if set forth herein.

51. 47 U.S.C. § 253(a) provides that "No state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

52. ExteNet has been attempting to exercise its right to access the rights of way located within the Village to provide telecommunications services.

53. As a matter of law, the Village has unreasonably delayed in acting on Plaintiff's Application and request to access the public right of way to install its Equipment on a replacement utility pole.

54. The Village's failure to act constitutes unreasonable delay, effective prohibition and unreasonable discrimination in violation of 47 U.S.C. § 253(a).

55. The Village's failure to act obstructs, prevents and bars entry to the

deployment of Plaintiff's telecommunications facilities in the Village's right of way, while upon information and belief other similarly situated utility providers in the rights of way have not been subjected to the same delay.

56. The Village's intentional inaction in response to Plaintiff's attempts to gain access to the public rights of way and provide telecommunications services creates an unreasonable ongoing delay and discriminatory treatment of Plaintiff as compared to other utility providers in the right of way, prohibiting Plaintiff from providing telecommunications services in violation of 47 U.S.C. § 253(a).

57. The Village's inaction is not within the limited authority reserved to the Village under 47 U.S.C. § 253(c).

58. Plaintiff has suffered and will continue to suffer irreparable harm as a result of the Village's delay of Plaintiff's efforts to deploy its infrastructure within the public rights of way.

59. Defendant's inaction regarding *a single wireless facility* on a replacement of an *existing utility pole* in the right of way violates the text and spirit of the TCA.

60. Mandatory and permanent injunctive relief is particularly appropriate in this case, which involves just one location on a replacement of an existing utility pole in the public right of way.

61. Plaintiff is entitled to an order and judgment granting its Application and mandating that the Village issue all necessary permits and authorizations for Plaintiff to begin deployment of its Equipment and the replacement utility pole in the public right of way.

**COUNT III**
**(For Violation of New York State Transportation Corporations Law § 27)**

62. Plaintiff repeats and realleges all prior allegations as if set forth herein.

63. New York State Transportation Corporations Law § 27 provides that any provider "may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways and may erect, construct and maintain its necessary stations, plants, equipment or lines upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same . . ."

64. The Village's refusal to act on Plaintiff's request to deploy its infrastructure in the rights of way violates Plaintiff's rights under New York State Transportation Law § 27 and interferes with its CPCN issued by the New York State Public Service Commission.

65. Plaintiff is thus entitled to an order and judgment granting its Application and mandating that the Village issue all necessary permits and authorizations for ExteNet to immediately begin the necessary work to deploy its infrastructure in the rights of way.

### Count IV
### (Permanent Injunction)

66. Plaintiff repeats and realleges all prior allegations as if set forth herein.

67. Plaintiff has a likelihood of success on the merits because it is entitled to access public rights of way under federal law, New York law, and Plaintiff's CPCN, and there is no reasonable justification for Defendant's failure to act on Plaintiff's Application to modify an existing utility pole already in the right of way for the purpose of locating telecommunications equipment thereon.

68. There can be no dispute that Defendant disregarded federal law by its failure to act, and that Plaintiff's Application should have been granted.

69. Given that the matter in dispute is Defendant's failure to issue a Conditional Use Permit, Plaintiff cannot be made completely whole by damages and has no other adequate

remedy at law other than the Court ordering that Plaintiff's Application be deemed granted or Defendant being compelled to grant Plaintiff's Application.

70. A balancing of the equities tips in Plaintiff's favor in that it has proceeded throughout the application process in good faith and has submitted all requested forms and documents (including additional information requested by Defendant).

71. In contrast, Defendants have failed to act as required by federal law, have failed to answer emails from Plaintiff, and have even failed to act in response to Plaintiff's reasonable offer to enter into a belated tolling agreement in order to give the Village additional time to act and avoid this litigation.

72. As such, Plaintiff is entitled to a judgment and permanent injunction compelling Defendant and its agents to issue a Conditional Use Permit and any other approvals and/or permits required for Plaintiff's proposed wireless facility.

**WHEREFORE**, ExteNet respectfully demands judgment as follows:

1. On the First Count, an order and judgment granting the Application and mandating that the Village issue all necessary permits and authorizations for ExteNet to immediately deploy its infrastructure in the right of way.

2. On the Second Count, an order and judgment granting the Application and mandating that the Village issue all necessary permits and authorizations for ExteNet to immediately deploy its infrastructure in the right of way.

3. On the Third Count, an order and judgment granting the Application and mandating that the Village issue all necessary permits and authorizations for ExteNet to immediately deploy its infrastructure in the right of way.

4. On the Fourth Count, an order and judgment granting the Application and mandating that the Village issue all necessary permits and authorizations for ExteNet to immediately deploy its infrastructure in the right of way.

5. On all Counts, damages and interest to which ExteNet is lawfully entitled, together with such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
      June 20, 2018

**CUDDY & FEDER LLP**
Attorneys for Plaintiff
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300

By:      /s/     
Leanne M. Shofi (LS 3750)